IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MICHAEL J. MITCHELL and<br>TAMMITHA M. MITCHELL, husband<br>and wife | : <br> : <br> : <br> : | |
| vs. | : <br> : | 02-CV-3652 |
| POWERMATIC CORPORATION, a/k/a<br>POWERMATIC, INC., JET EQUIPMENT<br>& TOOLS, INC., AND DEVLIEG-<br>BULLARD, INC. a/k/a DEVLIEG<br>BULLARD II, INC. | : <br> : <br> : <br> : <br> : | <br><br>JURY TRIAL DEMANDED |

**O R D E R**

AND NOW, this      day of            , 2003, it is hereby ORDERED and DECREED that the Motion for Summary Judgment of defendant, WMH Tool Group, Inc. (formerly known as Jet Equipment & Tools, Inc.), Successor-By-Merger to Powermatic Corporation, is granted and all claims and crossclaims against it are hereby dismissed.

BY THE COURT:

_____
                                                        J.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MICHAEL J. MITCHELL and TAMMITHA M. MITCHELL, husband and wife | : : : : | |
| vs. | : : | 02-CV-3652 |
| POWERMATIC CORPORATION, a/k/a POWERMATIC, INC., JET EQUIPMENT & TOOLS, INC., AND DEVLIEG-BULLARD, INC. a/k/a DEVLIEG BULLARD II, INC. | : : : : : : | JURY TRIAL DEMANDED |

**MOTION FOR SUMMARY JUDGMENT OF DEFENDANT,
WMH TOOL GROUP ,INC.  *(FORMERLY KNOWN AS
JET EQUIPMENT & TOOLS , INC.), SUCCESSOR -
BY - MERGER TO POWERMATIC CORPORATION*

Defendant, WMH Tool Group, Inc. (formerly known as Jet Equipment & Tools, Inc.), Successor-By-Merger to Powermatic Corporation (hereinafter "WMH"), by and through its attorneys, Bennett, Bricklin & Saltzburg, LLP, hereby moves this Honorable Court for summary judgment and, in support thereof avers as follows:

1. Plaintiff filed suit alleging injuries received as a result of his use of a "Powermatic Model 27 shaper" on June 8, 2000.  See plaintiff's Complaint attached hereto as Exhibit "A."

2. The shaper in question was manufactured and sold by the Powermatic Division of DeVlieg-Bullard, Inc.

3. Defendant WMH has filed an Answer to the Complaint denying that it ever owned, operated, or was a successor to  Powermatic, Inc. or  Powermatic, a Division of DeVlieg-Bullard, Inc.  See answer attached hereto as Exhibit "B."

4. Attached hereto is the Affidavit of William Bernstein, Esquire who has

represented Powermatic Corporation, Jet Equipment and Tools, Inc. and WMH Tool Group, (See Exhibit "C") said affidavit containing and incorporating Exhibits C1 through C7.

5. DeVlieg-Bullard, Inc. filed a Bankruptcy Petition under Chapter 11 on July 15, 1999.

6. Jet Equipment and Tools, Inc. (hereinafter "Jet") entered into an Asset Purchase Agreement with DeVlieg-Bullard, Inc. (hereinafter "DBI") on September 27, 1999 for the purchase of the Powermatic Division of DBI. (Exhibit C4)

7. On September 29, 1999, Jet was authorized to purchase the assets of the Powermatic, Division of DBI pursuant to Order of the Bankruptcy Court. (Exhibit C5).

8. Subsequently, by Assignment and Assumption Agreement of October 15, 1999, Jet assigned its rights to Powermatic Corporation to purchase the assets of Powermatic Division of DBI. (Exhibit C6).

9. The Bankruptcy Court's Order allowed the sale of the assets of the Powermatic Division of DBI to Jet free and clear of liens, encumbrances and interests .

10. Specifically, the court order provided...

> F. That the Powermatic assets shall be sold, conveyed, assigned, transferred and delivered to Jet free and clear of all liens, mortgages, pledges, security interests, restrictions, prior assignments **liabilities, obligations,** encumbrances, charges, **claims,** and interests of any and every kind, nature and description whatsoever... (emphasis added) (Exhibit C5).

11. Further, the order allowed:

> J. After the Closing, neither the Purchaser nor any of its affiliates shall be deemed to be a successor of Debtor and the purchaser and its affiliates shall not be responsible for any of the Debtor's liabilities or

       obligations, other than those expressly assumed by the Purchaser pursuant to the Asset Purchase Agreement and the Amendment. (Exhibit C5).

12. Neither Powermatic Corporation nor Jet, now known as WMH Tool Group, Inc., ever owned, operated or was a successor to Powermatic, Inc. or Powermatic, a division of DeVlieg-Bullard, Inc.

13. Powermatic Corporation was incorporated on October 5, 1999 and prior to that date did not exist. (Exhibit C1).

14. The Powermatic Shaper Model 27 on which plaintiff was allegedly injured was sold on or about July 25, 1993, six years before Powermatic Corporation came into existence.

15. Moving defendant has no liability to the plaintiffs under any of the exceptions to the rule of no successor liability.

WHEREFORE, it is respectfully requested that this Court enter summary judgment in favor of the defendant, WMH Tool Group, Inc. (formerly known as Jet Equipment & Tools, Inc.), Successor-By-Merger to Powermatic Corporation.

                Respectfully submitted,

                **BENNETT, BRICKLIN & SALTZBURG, LLP**

        By: _____
            Joel Paul Fishbein, Esquire
            Attorney for Defendant,
            WMH Tool Group, Inc., (Formerly
            Known as Jet Equipment & Tools, Inc.),
            Successor-By-Merger to Powermatic
            Corporation

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MICHAEL J. MITCHELL and TAMMITHA M. MITCHELL, husband and wife | : : : : | |
| vs. | : : | 02-CV-3652 |
| POWERMATIC CORPORATION, a/k/a POWERMATIC, INC., JET EQUIPMENT & TOOLS, INC., AND DEVLIEG-BULLARD, INC. a/k/a DEVLIEG BULLARD II, INC. | : : : : : | JURY TRIAL DEMANDED |

**MEMORANDUM OF LAW**

I. **ISSUE**

Moving Defendant did not manufacture, design, sell or distribute the shaper involved in the plaintiff's accident and as a matter of Pennsylvania law cannot be held liable to the plaintiffs on any of the exceptions to the general rule of no successor liability where moving defendant purchased a portion of the assets of a bankrupt company with the approval of and the limitations on liability of the bankruptcy court.

II. **STANDARD FOR ENTRY OF SUMMARY JUDGMENT**

A motion for summary judgment shall be granted where all of the evidence demonstrates that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. Federal Rule of Civil Procedure 56(c). The moving party has the initial burden of demonstrating that no genuine issue of material fact exists. Once the moving party has satisfied this requirement, the non-moving party must present evidence that there is a genuine issue of material fact. The non-moving party may not simply rest on the pleadings, but must go beyond the

pleadings in presenting evidence of a disputed fact. In deciding a motion for summary judgment, a court must review the facts and all reasonable inferences derived therefrom in the light most favorable to the non-moving party. See Celotex Corp. v. Catrett, 477 U.S. 317, 323-324, 91 L. Ed. 2d 265, 106 S. Ct. 2548 (1986); Josey v. John R. Hollingsworth Corporation, 996 F. 2d 632, 637 (3rd Cir. 1993).

### III.   FACTS

Plaintiff, Michael Mitchell ("Mitchell") , was an employee of Brubaker Kitchens in Lancaster, Pennsylvania on June 8, 2000. He alleges that he was making a raised panel insert for a cabinet door and, while holding a work piece with both hands, the cutters of the shaper which he was using "violently pulled to the Plaintiff's right side," causing his left hand to contact the cutters and sustain injury.

On or about June 7, 2002, Mitchell and his wife brought suit against Powermatic Corporation, a/k/a Powermatic, Inc., Jet Equipment and Tools, Inc. and Devlieg-Bullard, Inc. a/k/a Devlieg-Bullard II. His complaint alleges that the shaper on which he was working at the time of his injury was manufactured by a company known as Powermatic, Inc. In support of this allegation, Mr. Mitchell has supplied responses to discovery in which the shaper is more particularly identified as Powermatic Shaper, Model 27, Serial No. 9227023 which was purchased from the Baer Supply Company on July 25, 1993. (See plaintiff's Answer to Interrogatory # 8 attached hereto as Exhibit "D"). Attached to Mr. Mitchell's Response to Request for Production of documents is a Maintenance Instruction Manual With Parts list for the identified shaper. The manual provides the address (McMinnville, Tennessee 37110) and registered corporate name (Powermatic, a division of Devlieg-Bullard, Inc.) of the manufacturer of the shaper. (See attached Exhibit "E").

Powermatic was a division of Devlieg-Bullard, Inc. (DBI) which filed for bankruptcy under

Chapter 11 of the Bankruptcy Code on July 15, 1999. Pursuant to the reorganization of the company, assets of the Powermatic Division of DBI. were sold at auction to Sunhill NIC Company, Inc. An Asset Purchase Agreement (attached hereto as Exhibit "C3") was prepared to evidence the terms of the sale. Although Sunhill was the original bidder for the Powermatic Division of DBI, it lost the final bidding for the company to Jet Equipment and Tools, Inc. (Jet). Subsequently, an agreement was entered into between DBI and Jet which substituted Jet as the buyer in place of Sunhill. The Bankruptcy Court confirmed the sale of the Powermatic Division assets to Jet by order of September 29, 1999. A copy of that order is attached hereto as Exhibit C5.

The Order allowed the Debtor (DBI) to sell the Powermatic assets "free and clear of liens, encumbrances and interest." As part of the Order, the court made certain findings of facts and conclusions of law and concluded that the Purchaser was entitled to receive the Powermatic assets free and clear of all liabilities of any kind, nature and description whatsoever. The Court further held that "neither the Purchaser nor any of its affiliates shall be deemed to be a successor of Debtor and Purchaser and its affiliates shall not be responsible for any of the Debtor's liabilities or obligations, other than those expressly assumed by the Purchaser pursuant to the Asset Purchase Agreement and the Amendment."

Thereafter, Powermatic Corporation was incorporated in the State of Delaware on October 5, 1999. Jet subsequently assigned its right to purchase the assets of the Powermatic Division of DBI to the Powermatic Corporation. (See Exhibit "C6"). On October 8, 1999, DBI and Powermatic Corporation entered into a bill of sale and Assignment and Assumption Agreement which was to be effective on October 15, 1999. (Exhibit "C7"). DBI was the seller and Powermatic Corporation became the buyer of the assets of the Powermatic Division of DBI.

Jet Equipment and Tools Company, Inc., as part of an unrelated merger, changed its name

3

to WMH Tool Group, Inc. and, as part of a 2001 merger, Powermatic Corporation went out of existence.  Neither Powermatic Corporation nor Jet Equipment and Tools, Inc. ever owned, operated, or had any involvement with Powermatic, Inc. or with Powermatic, a division of Devlieg-Bullard, Inc. until the purchase of the assets following the bankruptcy sale in September 1999.

As the accident occurred and the cause of action arose in Pennsylvania, Pennsylvania tort law is applicable.  The shaper on which plaintiff was allegedly injured was manufactured in 1992 or 1993 by The Powermatic Division of DeVlieg-Bullard, Inc. ("DBI").  Jet purchased the assets of the Powermatic Division from DBI pursuant to the order of the Bankruptcy Court and assigned its rights to the sale to Powermatic Corporation, a completely new entity which came into existence on October 5, 1999.  (See attached Exhibit "C1").  Powermatic, Inc., a separate entity, went out of existence on October 5, 1999.  (See attached Exhibit "C2").  Powermatic Corporation was never known as Powermatic, Inc. or as the Powermatic Division of DeVleig-Bullard, Inc. and had no involvement with either company.[1]  A narrative of the history and relationship of the various companies is set forth in the deposition of Ben Nixon taken on October 7, 2003 at page 18, line 15 to page 22, line 14, a copy of said pages is attached hereto and designated as Exhibit "F".

Judge Marilyn Shea-Stonum's September 29, 1999 order which permitted DBI to sell the assets of its Powermatic Division is exhaustive and includes a recitation of the facts of the underlying bankruptcy and the decision to sell the assets.  In particular, it is noted that DBI "engaged in an extensive effort to sell the Powermatic Assets" prior to filing its bankruptcy petition (at paragraph #5).  In fact, Sunhill-Nic Company, Inc. was the original bidder for the Powermatic

---

[1] DeVlieg-Bullard, II, Inc. is a successor in interest of De Vlieg Bullard, Inc. following the bankruptcy of that company. "DeVlieg-Bullard, Inc." filed a Plan for Reorganization under Chapter 11 of the Bankruptcy Code in or about October 2001.

4

Division of DBI but lost the final bidding at the bankruptcy court hearing to Jet. The court order referred specifically to Jet's purchase of the assets of the Powermatic Division and found that the offer was a fair and reasonable one under the circumstances of this bankruptcy petition. It is further noted that Jet was a good faith purchaser of those assets and entitled to the benefits afforded by §363(m) of the bankruptcy code.[2] The court order specifically held that:

> The Powermatic Assets shall be sold, conveyed, assigned, transferred, and delivered to the purchaser free and clear of all liens, mortgages, pledges, security interest, restrictions, prior assignments, liabilities, obligations, encumbrances, charges, claims and interests of any and every kind, nature and description whatsoever...

It is clear from the above that it was never intended that Jet and, eventually, Powermatic Corporation be deemed a "successor corporation" to the Powermatic Division of DBI. To the contrary, the Asset Purchase Agreement specifically stated that the purchase was free and clear of liens, encumbrances and other interests pursuant to the Order of the Bankruptcy Court. Additionally, Jet only agreed to accept responsibility for product liability claims with respect to the products of the business <u>sold on or after the closing date</u> and DBI specifically <u>retained all liabilities not expressly assumed by the buyer</u>. ( Paragraphs 1.4(d), 1.5 of Exhibit "C3").

The bankruptcy Order and Asset Purchase Agreement conclusively establish that Jet (and subsequently Powermatic Corporation) did not at any time accept responsibility for the liabilities of the Powermatic Division of DBI. To the contrary, DBI specifically retained responsibility for all of those liabilities which had not been expressly assumed by Jet. Those liabilities include any

---

[2] §363(m) The reversal or modification on appeal of an authorization under subsection (b) or (c) of this section of a sale or lease of property does not effect the validity of a sale or a lease under such authorization to an entity that purchased or leased such property in good faith, whether or not such entity knew of the pendency of the appeal unless such authorization and such sale or lease were stayed pending appeal.

product liability claims with respect to products of the business sold before the closing date of September 29, 1999.

IV.     **LAW AND ARGUMENT**

As the accident occurred and the cause of action arose in Pennsylvania, Pennsylvania tort law, including law on successor liability is applicable.

Generally, when one corporation sells or transfers its assets to a second corporation, the successor does not become liable for the debts and liabilities of the predecessor. LaFountain v. Webb Indus. Corp., 951 F2d 544 (3d Cir. 1991); Dale v. Webb Corporation, 252 F.Supp. 2d 186 (E.D. Pa. 2003). However, there are several traditional exceptions to the general rule as well as the "product line exception." The traditional exceptions are: (1) the purchaser of assets expressly or impliedly agrees to assume obligations of the transferor; (2) the transaction amounts to a consolidation or defacto merger; (3) the purchasing corporation is merely a continuation of the transferor corporation; (4) the transaction is fraudulently entered into to escape liability; of (5) the transfer was made without adequate consideration and no provisions were made for creditors of the selling corporation. Philadelphia Electric Co. v. Hercules, Inc., 762 F.2d 303 (3d Cir. 1985); Hill v. Trailmobile, Inc., 603 A.2d 602 (Pa. Super. 1992). As a matter of law, none of these exceptions are present in the instant matter in light of the acquisition of a portion of the assets of DBI by Jet pursuant to a sale authorized and approved by the bankruptcy court supervising the bankruptcy of DBI.

Some courts, including the Superior Court of Pennsylvania, have expanded on the traditional exceptions to the general non-liability rule by recognizing what is referred to as the product line exception. Kradel v. Fox River Tractor Co., 308 F.3d 328 (3d Cir. 2002); Dawejko v. Jorgensen Steel Co., 434 A.2d 106 (Pa. Super. 1981). The federal courts which have ruled on the product line exception have predicted that the Pennsylvania Supreme Court would adopt the holding of the Superior Court in Dawejko, *supra.*

6

The product line exception, as enunciated by the court in <u>Dawejko</u>, *supra*, is that:

> Where one corporation acquires all or substantially all of the manufacturing assets of another corporation, even if exclusively for cash, and undertakes essentially the same manufacturing operation as the selling corporation, the purchasing corporation is strictly liable for injuries caused by defects in units of the same product line, even if previously manufactured and distributed by the selling corporation or its predecessor.

<u>Dawejko,</u> *supra*, at 110 cited in <u>Kradel</u>, *supra*, at 331.

In <u>Hill v. Trailmobile, Inc.</u>, 603 A.2d 602 (Pa. Super. 1992), the Superior Court of Pennsylvania substantially limited the availability of the product line exception by requiring that the following three factors, commonly referred to as the "Ray factors" be established before the exception may be applied. (1) The virtual destruction of the plaintiff's remedies against the original manufacturer caused by the successor's acquisition of the business; (2) the successor's ability to assume the original manufacturer's risk-spreading rule; and (3) the fairness of requiring the successor to assume a responsibility for defective products that was a burden necessarily attached to the original manufacturer's good will being employed by the successor in the continued operation of the business.

Although the <u>Dawejko</u> decision characterized the Ray factors as advisory and expressly excluded them from its formulation of the product line exception, the Superior Court in <u>Hill</u>, *supra*, revisited the issue and stated the product line exception to the general rule of no liability for successor corporations may only be applied where the Ray factors had each been established. <u>Hill</u>, 603 A.2d at 606. The Third Circuit in <u>Kradel</u> resolved this issue by explicitly stating that <u>Hill</u>, *supra*, has recast the three factors in Ray as requirements. <u>Kradel</u>, *supra*, at 332.

(1) The First Ray Factor: <u>the destruction of the plaintiff's remedies against the original manufacturer</u>.

There had been a split in authority among judges of the U.S. District Court for the

7

Eastern District of Pennsylvania as to whether the successor's acquisition of the predecessor must have caused the destruction of the plaintiff's remedy against the original manufacturer for the product line exception to apply. Dale v. Webb Corporation, 2003 U.S. Dist. LEXIS 4803 (Robreno, J.). However, these cases were decided prior to the opinion of the Third Circuit in Kradel, *supra*, above, which held that the presence of all three Ray factors is a prerequisite for the applicability of the product line exception and therefore expressly negated the premise that the Ray factors were not requirements. The court in Dale, *supra*, noting that there has been no Pennsylvania state authority addressing this precise issue, predicted that the Supreme Court of Pennsylvania would find the causation requirement to be an essential element of Pennsylvania's product line exception.

There is no evidence in this case that moving defendant caused or contributed to the destruction of the plaintiff's remedies against the manufacturer of the shaper, Powermatic Division of De-Vlieg Bullard, Inc. In fact, the record establishes that Jet Equipment purchased some of the assets of DBI after DBI filed for bankruptcy and the court approved the sale free and clear of liabilities upon Jet and its successors.

In Fehr v. C.O. Porter Machinery Co., 2003 U.S. Dist. LEXIS 18028 (Schiller, J.), the successor company moved for summary judgment on the basis that the plaintiff could not establish the first Ray factor. The court denied the motion for summary judgment, noting that the purchase agreement between the manufacturer and the successor corporation was entered into prior to the manufacturer's bankruptcy. Therefore, the manufacturer was not bankrupt when the successor purchased its assets and there was no evidence indicating that the manufacturer would have filed for bankruptcy in the absence of the successor's agreement to purchase the company's assets, given that the agreement contractually required the manufacturer to file for bankruptcy. However, in the instant matter, the purchase of the assets of the Powermatic Division of DeVlieg Bullard, Inc. was not undertaken until after bankruptcy of DBI and subject to the bankruptcy court's approval and order.

Prior to the Third Circuit opinion in <u>Kradel</u>, *supra,* the court in <u>Tracey v. Winchester</u>, 745 F.Supp. 1099 (E.D. Pa. 1990) predicted that the Pennsylvania Supreme Court would adopt the product line exception, but would require as an essential element of the product line exception that the successor corporation caused or contributed to the plaintiff's inability to recover against the predecessor. This was affirmed by the Third Circuit at 928 F.2d 397 (3d Cir. 1991), (opinion not for publication). As noted in <u>Keselyak v. Reach All, Inc.</u>, 660 A.2d 1350 (Pa. Super. 1995), the Superior Court, referring to the case of <u>Conway v. White Trucks</u>, 885 F2d 90 (3d Cir. 1989), noted that the <u>Conway</u> court found that almost every court that has addressed the first Ray factor has emphasized the requirement that the asset transfer must have caused the destruction of the plaintiff's remedy.

  (2) <u>The Third Ray Factor: the fairness of requiring the successor to assume a responsibility for defective products that was a burden necessarily attached to the original manufacturer's good will being enjoyed by the successor in the continued operation of the business</u>.

Initially, it must be noted that Jet did not purchase all of the assets of the bankrupt DBI. Rather, it purchased only partial assets including the Powermatic Division, which manufactured the Powermatic shaper. Admittedly, Jet and its successors have continued to manufacture and/or fabricate Powermatic shapers. However, DBI filed for bankruptcy under Chapter 11 of the Bankruptcy Code in July of 1999. On September 29, 1999, the U.S. Bankruptcy Court for the Northern District of Ohio entered an order approving the sale of the Powermatic Division to Jet. The order allowed DBI to sell the assets free and clear of liens, encumbrances and interest. The court further held that neither the purchaser nor any of its affiliates shall be deemed a successor of DBI and that purchaser and its affiliates shall not be responsible for any of the debtor's liabilities or obligations other than those expressly assumed by the purchaser pursuant to the asset purchase agreement and the amendment. The asset purchase agreement provided that Jet agreed only to accept responsibility for product liability claims with respect to the products of the

9

business sold on or after the closing date and that DBI specifically retained all liabilities not expressly assumed by the buyer.

It is respectfully suggested that the consideration paid by Jet to the bankrupt corporation was premised on Jet's not being held liable for injuries resulting from Powermatic Division's products manufactured and sold prior to Jet's acquisition of those assets. Therefore, the plaintiffs cannot establish the fairness of requiring moving defendants to assume the responsibility for defects in the products manufactured by the Powermatic Division of DBI when the consideration paid by Jet was premised on its immunity from claims arising from products manufactured prior to its acquisition of assets.

As stated by the court in Dale, *supra*, where the predecessor corporation has gone into receivership prior to transferring its assets to the successor corporation, if the product line exception were applied without a causation requirement, prospective purchasers might be deterred from bidding on the bankrupted entity's assets or might demand a downward adjustment in the sale price paid for the assets of the state, citing Tracey v. Winchester Repeating Arms, *supra*. The court in Tracey further noted that while such a reduction in price or refusal to purchase would not be a problem in a case of an asset purchase involving two solvent corporations, it might well be a problem in the bankruptcy context because any diminution in the value of the saleable assets would be borne by the bankrupt corporation's creditors.

V.      **CONCLUSION**

Powermatic Corporation, and by extension, Jet Equipment and Tool Company are not successor corporations to the Powermatic Division of DeVlieg-Bullard, Inc. Accordingly, they cannot be held responsible for any alleged defect in the Powermatic shaper on which plaintiff was allegedly injured on June 8, 2000. Jet did not purchase the assets of the Powermatic Division until the entry of the Bankruptcy Court's order of September 29, 1999 approving the purchase "free and clear of all liens... and liabilities." Powermatic Corporation did not come into existence until

October 5, 1999 and in no way brought about the bankruptcy of DBI. Further, the Asset Purchase Agreement specifically retained liability for all products manufactured prior to the closing date in September 1999 to DBI. Since plaintiff was injured on a shaper manufactured on or before 1993, it is respectfully requested that Your Honorable Court grant summary judgment in favor of defendant, WMH Tool Group, Inc. (formerly known as Jet Equipment & Tools, Inc.), Successor-By-Merger to Powermatic Corporation since as a matter of law, moving defendant cannot be held liable to the plaintiffs on any theories of successor liability.

                          Respectfully submitted,

                          **BENNETT, BRICKLIN & SALTZBURG, LLP**

                          By: _____
                               Joel Paul Fishbein, Esquire
                              Attorney for Defendant,
                              WMH Tool Group, Inc., (Formerly
                              Known as Jet Equipment & Tools, Inc.),
                              Successor-By-Merger to Powermatic
                              Corporation

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| MICHAEL J. MITCHELL and TAMMITHA M. MITCHELL, husband and wife | : : : : : | |
| vs. | : : | 02-CV-3652 |
| POWERMATIC CORPORATION, a/k/a POWERMATIC, INC., JET EQUIPMENT & TOOLS, INC., AND DEVLIEG-BULLARD, INC. a/k/a DEVLIEG BULLARD II, INC. | : : : : : : | JURY TRIAL DEMANDED |

### *CERTIFICATE OF SERVICE*

I do hereby certify that service of a true and correct copy of the motion for summary judgment of defendant, WMH Tool Group, Inc. (formerly known as Jet Equipment & Tools, Inc.), Successor-By-Merger to Powermatic Corporation was made on the 12th day of November , 2003, to the parties listed below by United States Mail, postage pre-paid.

Soren P. West, Esquire
319 North Duke Road
Lancaster, PA   17602-4915

Warren E. Voter, Esquire
**Sweeney & Sheehan**
1515 Market Street, 19th Floor
Philadelphia, PA 19102


**BENNETT, BRICKLIN & SALTZBURG LLP**


BY: _____
**JOEL PAUL FISHBEIN, Esquire**
Attorney for Defendant,
WMH Tool Group, Inc., (Formerly
Known as Jet Equipment & Tools, Inc.),
Successor-By-Merger to Powermatic
Corporation