```
           IN THE UNITED STATES DISTRICT COURT FOR
              THE EASTERN DISTRICT OF PENNSYLVANIA

MICHAEL J. MITCHELL and          :
TAMMITHA M. MITCHELL, husband    :
and wife,                        :
          Plaintiffs             :
                                 :   CI-02- CV3652
          v.                     :
                                 :
POWERMATIC CORPORATION, a/k/a    :
POWERMATIC, INC., JET            :   JURY TRIAL DEMANDED
EQUIPMENT & TOOLS, INC., and     :
DEVLIEG-BULLARD, INC., a/k/a     :
DEVLIEG BULLARD II, INC.,        :
                                 :
          Defendants             :
```

**PLAINTIFF'S BRIEF IN OPPOSITION TO DEFENDANT POWERMATIC CORPORATION'S MOTION FOR SUMMARY JUDGMENT**

**STATEMENT OF FACTS**

For purposes of this brief only, Plaintiff stipulates to the facts as presented in Defendant's Memorandum of Law.

**DISCUSSION**

Defendant asserts it is entitled to summary judgment because there is no genuine issue of fact to be resolved at trial and because, as a matter of law, it cannot be held liable to Plaintiff on any theory of successor liability. Plaintiff concedes that no traditional exception to the general rule of successor liability is applicable. However, the product line exception <u>is</u> applicable since Plaintiff meets the requirements of all of the Ray factors.

**1. The First Ray Factor - the destruction of Plaintiff's remedy against the original manufacturer.**

Contrary to the Defendant's assertion, there is evidence that the moving Defendant caused or contributed to the destruction of Plaintiff's remedies against the original manufacturer, which was Powermatic, Inc. and not not Devlieg Bullard, Inc. as Defendant asserts. Although Powermatic, Inc., was doing business as the Powermatic Division of DeVlieg Bullard, Inc., it was a separate corporation.

On October 5, 1999, the Secretary of State of the state of Delaware certified the dissolution of a corporation known as Powermatic, Inc. (see Certificate of Dissolution, attached hereto as **EXHIBIT A**). The sole stockholder of Powermatic, Inc. is listed as DeVlieg Bullard, Inc., the seller of the assets of the Powermatic Division of DeVlieg Bullard, Inc. The date of dissolution is the exact same as the date of incorporation of Powermatic Corporation, the ultimate purchaser of the Powermatic assets (see Certificate of Incorporation, attached hereto as **EXHIBIT B**).

According to the deposition testimony of Ben Nixon, corporate designee of moving Defendant, Stanwich Industries, which later changed its name to DeVlieg Bullard, Inc., purchased the Powermatic business in 1986 and eventually sold its assets in 1999 (see Ben Nixon Deposition, p. 10, attached hereto as **EXHIBIT C**). The business entity known as Powermatic, Inc. was incorporated in 1986 and dissolved in 1999, a time period

comprising the exact length of DeVlieg Bullard's ownership of the Powermatic Division.

In addition, a supplemental agreement between the Powermatic Division of DeVlieg Bullard, Inc. and the United Steelworkers of America identifies the contracting "Company" as Powermatic, Inc. (see Supplemental Agreement, attached hereto as **EXHIBIT D**)

These facts establish that Powermatic, Inc. was an independent, subsidiary corporation of DeVlieg Bullard, Inc. which was doing business under the name of the Powermatic Division.

There is no evidence that DeVlieg Bullard, Inc. exercised any control or direction over Powermatic, Inc. in the design, manufacture or sale of the Model 27 Shaper, which gives rise to this action. According to Ben Nixon, the Powermatic business was created in 1921 or 1922. The business went through several different names until a corporation called Houdaille Industries purchased it in 1966. Stanwich Industries then purchased Powermatic from Houdaille Industries in 1986. Stanwich later changed its name to DeVlieg Bullard, Inc. and began operating the Powermatic business under the name of the Powermatic Division of DeVlieg Bullard, Inc. (see Ben Nixon Deposition pp.9-11, 12, 13, attached hereto as **EXHIBIT E**).

The purchase of the Powermatic business by Stanwich (later DeVlieg Bullard) was not accompanied by any noticeable change in

the products or personnel of Powermatic (see Ben Nixon Deposition, pp. 26-27, attached hereto as **EXHIBIT F**). Even the bankruptcy court Order acknowledges that the Powermatic Division was not part of DeVlieg Bullard's core business.

Furthermore, the Shaper that is the subject of this lawsuit was designed so long ago, the moving Defendant is unable to provide the date of its design or even the identity of the designer (see Sam Ellis Deposition, pg. 48, attached hereto as **EXHIBIT G**).

As an independent, subsidiary corporation, which was not being directed in its design, manufacture, or sale of the Model 27 Shaper, Powermatic, Inc. would be the manufacturer liable for injuries caused by the Shaper. Clearly, the sale of all of Powermatic, Inc.'s assets resulted in the dissolution of Powermatic, Inc. and the destruction of the Plaintiff's remedy.

It was not, as Defendant asserts, the bankruptcy of parent corporation DeVlieg Bullard, Inc. that caused destruction of Plaintiff's remedy but, rather, the purchase of all of Powermatic, Inc.'s assets which caused the subsequent dissolution of Powermatic, Inc. and, therefore, the destruction of Plaintiff's remedy.

Plaintiff has been unable to develop his theory any further at this time other than with the evidence presented. All of the files pertaining to the Powermatic Division of DeVlieg Bullard

were transferred to the moving defendant pursuant to the asset sale (see paragraph 1(1.1)(g) of Asset Purchase Agreement, attached hereto as **EXHIBIT H**).  However, those records were either destroyed or purged from antiquated computer files (see Supplemental Answers of WMH Tool Group, attached hereto as **EXHIBIT I**).  Additionally, the corporate designees of moving Defendant have denied any knowledge of the relationship of Powermatic, Inc. to the Powermatic Division of DeVlieg Bullard.

Regardless, the evidence that does exist at this time satisfies the requirements of the first Ray factor, establishes an issue of fact and shifts the burden of going forward on this issue to moving Defendant.

**2.    The Second and Third Ray Factors - Fairness**

The moving Defendant asserts that it would be unfair for it to assume the responsibility for defects in the products manufactured by the Powermatic Division of DeVlieg Bullard, Inc. when the consideration paid was premised upon immunity from such claims, and such terms were approved by the bankruptcy court.

However, even a good faith purchaser outside of bankruptcy may pay consideration for freedom from liability and, under Pennsylvania law, still be held liable under the product line exception.  Plaintiff fails to see how such an assumption of responsibility in this case is any different.

Simply put: if every assumption of responsibility which is contrary to the buyer's expectations is deemed to fail to satisfy the third Ray factor, then the product line exception is without meaning.  The only successor corporations which would be liable would be those that expressly assume liability, in which case, no exception would be necessary.

Successor liability is always somewhat unfair to the successor.  However, the courts have viewed factors two and three, not as dispositive or individually, but together as a balancing test.  In In Re Thorotrast Cases, the court stated:

> Rather than engaging in prophecy, it seems more appropriate to further delve into the rationale of the Supreme Court in *Dawejko*.  In essence, the *Dawejko* court has adopted a balancing test, although it does not specifically say that it is adopting a balancing test.
>
> On the one hand, the *Dawejko* court wishes to give some relief to an innocent plaintiff that has been harmed by a product on which a successor corporation continued to make money while the predecessor corporation goes out of business because of the sale of the product line.
>
> On the other hand, the *Dawejko* court wants to consider all the circumstances before holding one corporation liable for another's torts.  It should not be forgotten that the second and third prongs of the product line test talk about the ability to spread the risk and the general fairness to the successor.  In Re Thorotrast Cases, 26 Phila. 479, 509-10.

In this case, on the one hand, we have the moving Defendant, which has paid for the good will of the Powermatic Division (see 1(1.1)(i) of Asset Purchase Agreement, **EXHIBIT H**), continues to

benefit from both the good will and products of Powermatic (see web page of WMH Tool group, attached hereto as **EXHIBIT J**), and has the ability to spread the risks through the costs of its products.  The Defendant also had an expectation of freedom from liability based upon an asset purchase agreement which is, in these circumstances, contrary to Pennsylvania law.

On the other hand, we have an entirely blameless Plaintiff, who has lost his thumb and three of his fingers, who has suffered permanent disability and disfigurement, and has incurred costly medical treatments.  He is a young laborer, husband and father with a permanent disability.

In this balance of equities, it would be entirely unfair to dismiss this Plaintiff's suit.

Finally, in Thorotrast, *supra*, the court stated that "the foreseeability of the destruction of the plaintiffs' remedies should be considered a key factor in the successor's knowledge of whether there is any risk to share and in regard to fairness."

Again, Powermatic, Inc. filed a certificate of dissolution on the exact same day as Powermatic Corporation incorporated.  The moving Defendant supplied our office with the Powermatic, Inc. certificate of dissolution.  All agents for the moving Defendant have subsequently denied any knowledge of or dealings with Powermatic, Inc., but clearly someone associated with the moving Defendant knew, at the time of the asset purchase, that

Powermatic, Inc. was being dissolved.  Such knowledge would also support a finding that the moving Defendant had reason to know that potential plaintiffs' remedies were being destroyed.

## **CONCLUSION**

Defendant's Motion for Summary Judgment should be denied.

                              SOREN P. WEST LAW OFFICES


December 10, 2003          BY:_____
                              Soren P. West, #08223
                              Attorneys for Plaintiff
                              319 North Duke Street
                              Lancaster, PA 17602-4915
                              (717) 295-7272