# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MICHAEL J. MITCHELL and<br>TAMMITHA M. MITCHELL,<br>husband and wife,<br><br>Plaintiffs<br><br>v.<br><br>POWERMATIC CORPORATION, a/k/a<br>POWERMATIC, INC., JET EQUIPMENT & TOOLS,<br>INC., and DEVLIEG-BULLARD, INC., a/k/a<br>DEVLIEG-BULLARD II, INC.<br><br>Defendants. | :<br>:<br>:<br>: No. 02-3652<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>: |

## MEMORANDUM and ORDER

YOHN, J.                                                                                       February _____, 2004

      Michael J. Mitchell and Tammitha M. Mitchell bring this action against Powermatic Corporation, a/k/a Powermatic, Inc.,[1] Jet Equipment & Tools, Inc. and DeVlieg-Bullard, Inc., a/k/a DeVlieg-Bullard II, Inc. for damages resulting from an injury sustained by Michael Mitchell while he was operating a Powermatic Model 27 shaper. DeVlieg-Bullard, Inc., a/k/a DeVlieg-Bullard II, Inc. previously filed a motion for summary judgment, which was granted without opposition from the plaintiff and all claims against it were dismissed on December 29, 2003. Currently pending before the court is the remaining defendants' motion for summary judgment. For the reasons set forth below, defendants' motion for summary judgment will be granted.

## BACKGROUND

---

[1] Although plaintiffs classify Powermatic Corporation and Powermatic, Inc. as one and the same, the two are actually separate and distinct corporations. In fact, the relationship between Powermatic Corporation and Powermatic, Inc., or lack thereof, is the deciding factor in this case.

On June 8, 2000, plaintiff Michael Mitchell ("plaintiff")[2] was severely injured while using a "shaper" in the course of his employment at Brubaker Kitchens. More specifically, plaintiff was feeding a work piece with both hands through the shaper when the cutters of the shaper violently pulled to the side and caused plaintiff's left hand to make contact with the rotating cutters. The unguarded cutters amputated plaintiff's thumb and parts of three fingers on his left hand. The shaper was a Powermatic, Model 27. Plaintiff claims the shaper was defective and that defendants should therefore be held strictly liable.

Plaintiff believes (and defendants do not otherwise dispute) that the shaper in question was purchased from the Baer Supply Company on July 25, 1993. Def. Ex. D. The maintenance instructions and parts list for the specific shaper in question, which was produced by plaintiff, identifies "Powermatic, a division of DeVlieg-Bullard, Inc."[3] as the manufacturer of the shaper. Def. Ex. E. The copyright date on the instructions is 1991. *Id*. On July 15, 1999, DeVlieg-Bullard, Inc. ("DBI") filed for bankruptcy under Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Northern District of Ohio. Def. Ex. C-5. Pursuant to the reorganization of the company, substantially all of the assets of DBI's Powermatic division were sold under the direction of the presiding bankruptcy court. *Id*. Jet Equipment & Tools, Inc. ("Jet") was the prevailing bidder and agreed to pay a purchase price of $8.5 million in exchange for the Powermatic assets. *Id*. On October 15, 1999, Jet assigned its right to purchase the Powermatic assets from DBI to Powermatic Corporation, Def. Ex. C-6, a new corporation

---

[2] Although Tammitha Mitchell is also a plaintiff in the instant case, the claims are based on the injury sustained by Michael Mitchell, and so he will be referred to simply as "plaintiff."

[3] The parties also interchangeably use the name "Powermatic Division of DeVlieg-Bullard, Inc."

2

incorporated in Delaware on October 5, 1999. Def. Ex. C-1; Pl. Ex. B. Powermatic Corporation purchased the Powermatic assets from DBI, pursuant to this assignment and the terms of the asset purchase agreement originally entered into by DBI and Jet. Def. Ex. C-7. In part of an unrelated merger, Jet changed its name to WMH Tool Group, Inc., and as part of a June 2001 merger, Powermatic Corporation went out of existence. Def. Br. 4; Pl. Ex. E. The parties agree WMH is now the successor of Powermatic Corporation for purposes of this action. Pl. Ex. I.

Since the accident occurred in Pennsylvania, Pennsylvania tort law governs the instant cause of action, including its law on successor liability. Neither party disputes this.

## STANDARD OF REVIEW

Either party to a lawsuit may file a motion for summary judgment, and the court will grant it "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). "Facts that could alter the outcome are 'material,' and disputes are 'genuine' if evidence exists from which a rational person could conclude that the position of the person with the burden of proof on the disputed issue is correct." *Ideal Dairy Farms, Inc. v. John Lebatt, LTD.*, 90 F.3d 737, 743 (3d Cir. 1996) (citation omitted). When a court evaluates a motion for summary judgment, "[t]he evidence of the non-movant is to be believed," *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986), and "all justifiable inferences are to be drawn in [the non-movant's] favor." *Id*. Additionally, "[s]ummary judgment may not be granted . . . if there is a disagreement over what inferences can be reasonably drawn from the facts even if the facts are undisputed." *Ideal Dairy*, 90 F.3d at 744 (citation omitted). However, "an inference based upon a speculation or conjecture

3

does not create a material factual dispute sufficient to defeat entry of summary judgment." *Robertson v. Allied Signal, Inc.*, 914 F.2d 360, 382 n.12 (3d Cir. 1990).

To defeat summary judgment, the non-moving party cannot rest on the pleadings, but rather that party must go beyond the pleadings and present "specific facts showing that there is a genuine issue for trial." FED. R. CIV. P. 56(e).  Similarly, the non-moving party cannot rely on unsupported assertions, conclusory allegations, or mere suspicions in attempting to survive a summary judgment motion. *Williams v. Borough of W. Chester*, 891 F.2d 458, 460 (3d Cir.1989) (citing *Celotex v. Catrett*, 477 U.S. 317, 325 (1986)).  Further, the non-moving party has the burden of producing evidence to establish prima facie each element of his claim. *Celotex*, 477 U.S. at 322-23.  The non-movant must show more than "[t]he mere existence of a scintilla of evidence" for elements on which he bears the burden of production. *Anderson*, 477 U.S. at 252.  Thus, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citations omitted).

## DISCUSSION

As defendants point out, "[i]n general, [in Pennsylvania] when one corporation sells or transfers its assets to a second corporation, the successor does not become liable for the debts and liabilities of the predecessor." *LaFountain v. Webb Indus. Corp.*, 951 F.2d 544, 546-47 (3d Cir. 1991).  There are a number of exceptions to this general rule.  The exception at issue in the instant case, i.e. the only exception discussed by either plaintiff or defendants in their briefs regarding this motion for summary judgment, is the "product line" exception.  Pennsylvania courts adopted this exception in *Dawejko v. Jorgensen Steel Co.*, 434 A.2d 106 (Pa. Super. Ct.

1981), and the Third Circuit has adopted *Dawejko* as the law of Pennsylvania. *Kradel v. Fox River Tractor Co.*, 308 F.3d 328, 331-32 (3d Cir. 2002). The *Dawejko* court explained:

> Where one corporation acquires all or substantially all the manufacturing assets of another corporation, even if exclusively for cash, and undertakes essentially the same manufacturing operation as the selling corporation, the purchasing corporation is strictly liable for injuries caused by defects in units of the same product line, even if previously manufactured and distributed by the selling corporation or its predecessor.

*Dawejko,* 434 A.2d at 110 (quoting and adopting the standard from *Ramirez v. Amsted Indus., Inc.,* 431 A.2d 811, 825 (N.J. 1981)). The Third Circuit also recognized in *Kradel* that Pennsylvania has adopted three factors as "prerequisites for the product line exception." *Kradel*, 308 F.3d at 332 (citing *Hill v. Trailmobile, Inc.*, 603 A.2d 602, 606 (Pa. Super. Ct. 1992)). These three factors, commonly referred to as the *Ray* factors because they were originally articulated by the California Supreme Court in *Ray v. Alad Corp.*, 560 P.2d 3 (Cal. 1977), are:

> (1) the virtual destruction of the plaintiff's remedies against the original manufacturer caused by the successor's acquisition of the business, (2) the successor's ability to assume the original manufacturer's risk-spreading rule, and (3) the fairness of requiring the successor to assume a responsibility for defective products that was a burden necessarily attached to the original manufacturer's good will being enjoyed by the successor in the continued operation of the business.

*Hill*, 603 A.2d at 606 (quoting *Dawejko*, 434 A.2d at 109 (quoting *Ray*, 560 P.2d at 9)). "It is thus clear that the inability to recover from an original manufacturer is a prerequisite in Pennsylvania to the use of the product line exception." *Kradel*, 308 F.3d at 332.

The parties do not dispute that Mitchell is unable to recover from the original manufacturer. They focus, instead, on a wrinkle in the analysis of this factor that has yet to be addressed by either the Pennsylvania Supreme Court or the Third Circuit: whether the successor

*caused* the destruction of plaintiff's remedy against the original manufacturer.[4]  Defendants argue that they were not responsible for the destruction of plaintiff's remedy because DBI, from whom Powermatic Corporation purchased the Powermatic assets, was already in bankruptcy when the sale occurred.  In other words, defendants argue that DBI's filing for bankruptcy destroyed plaintiff's remedy against DBI and not Powermatic Corporation's acquisition of the Powermatic assets from DBI.  Def. Br. 8-9 (citing *Tracey v. Winchester Repeating Arms Co.*, 745 F. Supp. 1099 (E.D. Pa. 1990) in support of their argument).  Plaintiff does not challenge defendants' contention that he has no remedy against DBI because it went bankrupt and no longer exists.

However, plaintiff attempts to establish that the original manufacturer of the specific Powermatic shaper involved in the accident was not DBI, but rather Powermatic, Inc., a separate corporation doing business as "Powermatic Division of DeVlieg-Bullard, Inc."  Pl. Br. 2-5.  So, plaintiff argues that his remedy would be against Powermatic, Inc., the alleged original manufacturer, and that this remedy was destroyed by Powermatic Corporation when it acquired

---

[4] The parties do not address the thorny issue of whether causation by the successor corporation of plaintiff's lack of a remedy against the original manufacturer is legally a necessary element under Pennsylvania law for the product line exception to apply.  Since the Third Circuit established that the *Ray* factors are prerequisites for the product line exception in Pennsylvania, *Kradel*, 308 F.3d at 332, the Eastern District has twice dealt with this issue.  In *Fehr v. C.O. Porter Machinery Co.*, the court applied without analysis (and apparently without objection from the parties) the causation "requirement" and used it as a basis for denying summary judgment to the defendant.  *Fehr*, 2003 WL 22318009 at *2 (E.D. Pa. 2003).  In *Dale v. Webb Corp.*, the court went through a detailed analysis of the causation requirement and concluded that "the Supreme Court of Pennsylvania would find the causation requirement to be an essential element of Pennsylvania's product line exception."  *Dale*, 252 F. Supp. 2d 186, 192 (E.D. Pa. 2003).  The parties appear to accept the court's holding in *Dale* that the causation requirement is legally necessary under Pennsylvania law because they do not challenge it.  Since the parties do not challenge this finding, I will not address it here, but rather will accept that for the product line exception to apply to the instant case, Powermatic Corporation must have caused the destruction of Mitchell's remedy against the original manufacturer.

the Powermatic assets from DBI because this sale directly led to the dissolution of Powermatic, Inc. *Id*. However, plaintiff has failed to provide sufficient evidence to allow a reasonable fact finder to conclude that Powermatic, Inc., a separate corporation, manufactured the Powermatic shaper in question.

If one simply follows the paper trail of the business of making tools under the Powermatic name, which is summarized above, the name "Powermatic, Inc." is nowhere to be found. Plaintiff relies primarily on snippets of information about Powermatic, Inc. to support the inference that Powermatic, Inc. was a separate corporation which owned and operated the assets of the Powermatic division of DBI. First, plaintiff points out that Powermatic, Inc. was incorporated in Delaware on March 10, 1986, Def. Ex. C-2, and DBI (which was actually Stanwich Industries at that time)[5] acquired the Powermatic assets from Houdaille Industries, Inc. on April 4, 1986. Def. Ex. F at 19. However, at the time of that transaction, the Powermatic business was called "Powermatic Division of Houdaille Industries, Inc." *Id*. When Stanwich Industries purchased the Powermatic assets, the name simply changed to "Powermatic Division of Stanwich Industries, Inc." *Id*. Finally, when Stanwich Industries changed its name to DeVlieg-Bullard, Inc., the Powermatic business name changed to "Powermatic Division of DeVlieg-Bullard, Inc." Despite the incorporation of "Powermatic, Inc." around the time of the sale of the Powermatic assets from Houdaille to Stanwich (DBI), plaintiff has presented no evidence that Powermatic, Inc. was connected in any way to the purchase.

Plaintiff next highlights the fact that Powermatic, Inc. was dissolved on October 5, 1999

---

[5] Stanwich Industries, Inc. changed its name to DeVlieg-Bullard, Inc. when it went public in 1989.

at 3:30 p.m., Def. Ex. C-2; Pl. Ex. A, and Powermatic Corporation was incorporated in Delaware on October 5, 1999 at 3:31 p.m. Def. Ex. C-1; Pl. Ex. B. Further, plaintiff stresses DeVlieg-Bullard, Inc. was listed as the sole stockholder of Powermatic, Inc. at the time of dissolution. Pl. Ex. B. Hence, plaintiff infers that there must be some connection between the dissolution of Powermatic, Inc. and the incorporation of Powermatic Corporation, i.e. that Powermatic, Inc. was dissolved because its sole stockholder, DBI, sold the assets of the business to the newly formed Powermatic Corporation. There is no evidence to support such an inference. Even if a reasonable fact finder could make this inference, such an inference does not overcome the hurdle in plaintiff's path to surviving defendants' motion for summary judgment: presenting some evidence that Powermatic, Inc., a separate corporation, conducted business as "Powermatic Division of DeVlieg-Bullard, Inc." which would have survived DBI's bankruptcy if Powermatic Corporation had not bought the assets of its business during DBI's insolvency. Finally (and clearly fatal to plaintiff's case), plaintiff does not explain how, if his suppositions are correct, the assets of Powermatic, Inc., a separate corporate entity, could have been sold by DBI without the consent (as symbolized by a signature on the Asset Purchase Agreement) of Powermatic, Inc. This is a significant hole in plaintiff's theory.

Finally, plaintiff cites a supplemental agreement between the Powermatic Division of DeVlieg-Bullard, Inc. and the United Steelworkers of America as proof that Powermatic, Inc. owned the assets of the "Powermatic division," rather than DBI. One purpose of the January 31, 2001 supplemental agreement was to change the name of the Powermatic business from "Powermatic, Division of DeVlieg-Bullard, Inc." to "Powermatic Corporation." Pl. Ex. D. However, in the second paragraph of the agreement, a recital clause which otherwise simply

states that the supplemental agreement is the result of collective bargaining and was agreed upon by both parties, the Powermatic business is referred to as "Powermatic, Inc." *Id*. "Powermatic, Inc." is not referred to elsewhere in the contract, including the first page identifying the parties to the agreement and the last page containing the signatures of the contracting parties. *Id*. In other words, this appears to be simply a typographical error. The contract clearly states that the name on the previous contract was "Powermatic, A Division of DeVlieg-Bullard, Inc." and that the new name of this company is "Powermatic Corporation." *Id*. The previous contract is not in evidence and therefore cannot help to clarify this discrepancy. The random, single reference to the Powermatic business as "Powermatic, Inc." when it is referred to either as "Powermatic, A Division of DeVlieg-Bullard, Inc." or "Powermatic Corporation" everywhere else in the supplemental agreement does not show that "Powermatic, Inc." was a separate corporate entity that owned the assets of the Powermatic division and would have survived DBI's bankruptcy.

Plaintiff does not provide any deposition testimony or affidavits to support his arguments. Despite his contentions, the deposition testimony of Ben Nixon, corporate designee and human resource manager of defendants, does not support plaintiff's proposition that Powermatic, Inc. was a separate corporate entity doing business as "Powermatic, Division of DeVlieg-Bullard, Inc." Nixon repeatedly denied that there was any relationship between Powermatic, Inc. and any of the parties involved in the production of Powermatic tools. Pl. Ex. at 12-13; Def. Ex. E at 19-21. In fact, he explicitly states, "There was no Powermatic, Inc., to my knowledge." Def. Ex. at 19. There is no evidence that either Powermatic Corporation or DBI was ever known as "Powermatic, Inc." Moreover, there is no evidence that either Powermatic Corporation or Jet had any involvement with Powermatic, Inc.

9

In sum, plaintiff has produced no evidence that Powermatic, Inc. was a separate corporate entity doing business (i.e. manufacturing Powermatic tools) as "Powermatic, A Division of DeVlieg-Bullard, Inc." such that it would have survived DBI's bankruptcy. As previously stated, "an inference based upon a speculation or conjecture does not create a material factual dispute sufficient to defeat entry of summary judgment," *Robertson v. Allied Signal, Inc.*, 914 F.2d 360, 382 n.12 (3d Cir. 1990), nor does the existence of merely a "scintilla of evidence." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). The "evidence" produced by plaintiff in support of his case is somewhere between complete speculation and a scintilla. All of the documentary and deposition evidence is to the contrary. A rational fact finder could not find that Powermatic, Inc. manufactured the shaper in question, and that Powermatic, Inc. was the corporate entity that owned the assets of the Powermatic division and dissolved because its assets were sold to Powermatic Corporation. "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citations omitted). Hence, defendants' motion for summary judgment will be granted.

## CONCLUSION

Defendants' motion for summary judgment will be granted because plaintiff has failed to show that there is a genuine issue of material fact at issue. More specifically, plaintiff has failed to produce sufficient evidence to allow a reasonable fact finder to conclude that the product line exception applies to the instant case. There is no evidence that Powermatic, Inc. was a corporate entity doing business as "Powermatic Division of DeVlieg-Bullard, Inc." which manufactured the Powermatic shaper that injured plaintiff. Hence, there is no evidence that the sale of the

Powermatic assets from DBI to Powermatic Corporation destroyed plaintiff's remedy against the original manufacturer. Rather, the only reasonable conclusion from the evidence on the record is that plaintiff's remedy was destroyed by DBI's insolvency and that Powermatic, Inc. was in no way involved. Since causation is admittedly necessary to apply the product line exception in Pennsylvania, plaintiff's claim fails as a matter of law. Therefore, defendants' motion for summary judgment will be granted. An appropriate order follows.

# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MICHAEL J. MITCHELL and TAMMITHA M. MITCHELL, husband and wife,<br><br>Plaintiffs<br><br>v.<br><br>POWERMATIC CORPORATION, a/k/a POWERMATIC, INC., JET EQUIPMENT & TOOLS, INC., and DEVLIEG-BULLARD, INC., a/k/a DEVLIEG-BULLARD II, INC.<br><br>Defendants. | :<br>:<br>:<br>: No. 02-3652<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>: |

## **ORDER**

YOHN, J.

And now, this \_\_\_\_ day of February, 2004, upon consideration of the motion for summary judgment of defendants Powermatic Corporation and Jet Equipment & Tools, Inc. (Doc. # 27), the response of plaintiffs Michael J. Mitchell and Tammitha M. Mitchell in opposition thereto, defendants' reply, and after oral argument, it is hereby ORDERED that the defendants' motion for summary judgment is GRANTED. Judgment is ENTERED in favor of defendants Powermatic Corporation and Jet Equipment & Tools, Inc. and against plaintiffs Michael J. Mitchell and Tammitha M. Mitchell on all claims.

_____

William H. Yohn, Jr., Judge